IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

SANFORD WITTELS & HEISLER, LLP )
AND DAVID W. SANFORD, )
)
Plaintiffs, )
)
v. )  Civil Action No. 11-cv- 797 (LAK)
)
)  **JURY TRIAL DEMANDED**
CAPITOL SPECIALTY )
INSURANCE CORPORATION, )
)
Defendant. )
)
_____ )

## COMPLAINT

### Nature of the Case

1.    This is an insurance coverage action which seeks declaratory relief under the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201-2202, and damages for breach of contract and bad faith.

2.    As set forth more fully below, plaintiffs, the law firm of Sanford Wittels & Heisler, LLP ("SWH") and Partner David W. Sanford ("Sanford" and together with SWH, the "Plaintiffs"), seek a declaration of coverage for certain malpractice claims (as hereinafter defined, the "Malpractice Claims") tendered under Lawyers Professional Liability Insurance Policy No. 0303-7837 issued by defendant Capitol Specialty Insurance Corporation ("CSIC" or the "Defendant" or "Insurer") for the policy period December 10, 2007 to December 10, 2008 (the "Policy").

1

3.      Mr. Sanford and SWH also seek monetary damages for breach of Defendant's obligation under the Policy to defend the Malpractice Claims and for Defendant's bad faith denial of coverage after repeated acknowledgements of coverage upon which Plaintiffs relied to their detriment.

## The Parties

4.      Plaintiff SWH is a limited liability corporation incorporated in the state of New York, with offices in New York, New Jersey, California and Washington, D.C.  SWH is a civil rights law firm that conducts its business nationwide.

5.      Plaintiff Sanford is a founding partner of SWH and the managing partner of SWH's Washington, D.C. office.

6.      Defendant CSIC is an insurance company that at all relevant times engaged in the business of selling professional malpractice insurance policies.  CSIC is incorporated under the laws of the state of Wisconsin, and has its principal place of business in Appleton, Wisconsin. CSIC is identified as the insurer on the declarations page of the Policy.

## Jurisdiction and Venue

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because it is a dispute between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8.      This Court has personal jurisdiction over Defendant pursuant to Fed. R. Civ. P. 4(k), N.Y. C.P.L.R. § 302(a)(1), and N.Y. Ins. Law §§ 1212 and 1213 because, upon information and belief, Defendant-Insurer:

a.      is licensed to and does transact business in the state of New York, and

2

b.      has, within the relevant time period, transacted substantial business in the state of New York, including by selling insurance policies.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(2) because: (1) Plaintiff SWH is incorporated in the state of New York; (2) the Policy was negotiated in the state of New York by one of SWH's New York partners at SWH's New York office; (3) the Policy was issued by CSIC to SWH at its New York address; and (4) the Policy was reviewed by Excess Line Association of New York ("ELANY") in the state of New York to ensure compliance with New York insurance laws.

**The Policy**

10.     CSIC issued the Policy for the period December 10, 2007 through December 7, 2008.  This was the second policy issued to SWH by CSIC.  CSIC previously issued a policy to SWH for the policy period December 10, 2004 to December 10, 2005.

11.     Under the Policy, CSIC agreed to "pay on behalf of an Insured [including Mr. Sanford and SWH], subject to the limit of liability, all amounts in excess of the retention shown in the Declarations that an Insured becomes legally obligated to pay as Damages and Claim Expenses because of a Claim that is made and reported to [CSIC] during the Policy Period. . . ." *See* Policy, attached hereto as Exhibit 1, Section IA at 1.

12.     The term "Claim" is defined in the Policy as, *inter alia*, "a demand for money or Legal Services arising out of any actual or alleged acts, errors or omissions in connections with the performance of, or actual or alleged failure to perform, Legal Services." *See id.* at 9.

13.     The term "Damages" is defined in the Policy as "the monetary portion of any judgment, award or settlement." *See id.*

3

14.     The term "Claim Expenses" is defined in the Policy as "reasonable fees, costs and expenses charged by attorneys retained or approved by [CSIC] for a Claim brought against an Insured." *See id.*

15.     The Policy further provides that it is a condition precedent to coverage under the Policy that the act or omission that is the subject of a Claim occurred: "(1) during the Policy Period; or (2) on or after December 10, 2004, provided that all of the following three conditions are met: (a) the Insured did not notify any prior insurer of such act or omission or Related Act or Omission; and (b) prior to the inception date of the first policy issued by [CSIC] if continuously renewed, no insured had any basis (1) to believe that any Insured had breached a professional duty; or (2) to foresee that any such act or omission or Related Act or Omission might reasonably be expected to be the basis of a Claim against any Insured; and (3) there is no policy that provides insurance to the Insured for such liability or Claim." *See id.* Sec. I.A and Endorsement No. 2.

16.     Under the Policy, SWH has a self-insured retention of $100,000.00 per Claim. *See id.* at Declarations Page.

## The Malpractice Case Against SWH

17.     In 2007, Mr. Sanford and SWH agreed to represent three United States Department of Commerce (the "DOC") employees (the "Clients") who sought to pursue individual and class claims of race discrimination against the DOC.

18.     On October 5, 2005, SWH and Mr. Sanford filed a civil action on behalf of the Clients in the United States District Court for the District of Columbia (*Howard v. Gutierrez*, No. cv-05-1968).

19.     On March 17, 2006, the DOC filed a motion to strike the class claims (the "Motion") arguing, *inter alia*, that the Clients had missed a deadline for filing for class certification set by local rules of the D.C. District Court.  Mr. Sanford and SWH duly opposed the Motion.

20.     On February 6, 2007, the Court issued an order granting the DOC's Motion but allowing the Clients to pursue their individual claims (the "February 2007 Order").

21.     Mr. Sanford and SWH promptly moved for reconsideration of the February 2007 Order and to reinstate the class.  The Court, however, denied the motion and reaffirmed its prior holding.

22.     On February 21, 2007, Mr. Sanford and SWH filed a Rule 23(f) Petition for Interlocutory Appeal (the "Petition").  The United States Court of Appeals for the District of Columbia denied the Petition.

23.     Upon learning of the denial of their Rule 23(f) Petition, the Clients advised Mr. Sanford that, rather than seek reconsideration of the Court of Appeal's decision, they would continue to pursue their individual claims and appeal the denial of the class claims after their individual claims were resolved.

24.     On September 20, 2007, the Clients terminated their engagement of Mr. Sanford and SWH.  Thereafter, the Clients continued to pursue their individual claims in the discrimination case.

25.     At the time the Clients terminated their relationship with Mr. Sanford and SWH, there was no indication, nor was there any reasonable basis to believe, that the Clients were going to bring a malpractice claim against either Sanford or SWH.

26.     On or about March 23, 2008, Mr. Sanford and SWH received a letter from attorney Fred Goldberg (the "Goldberg Letter") stating that he represented the Clients and that he intended to file a lawsuit against Sanford and SWH for malpractice in the DOC litigation.

27.     In compliance with the terms of the Policy, on April 4, 2008, Mr. Sanford and SWH provided CSIC with a copy of the Goldberg Letter.  CSIC accepted such notice as notice of circumstances that could give rise to a Claim under the Policy and later acknowledged that such notice constituted the first notice of the Malpractice Claims.

28.     On January 21, 2010, the Clients, through their counsel Fred Goldberg, filed a civil action against SWH and Sanford in the District of Columbia Superior Court (*Janet Howard, et. al. v SWH, et al.*, No. CA 2010-00031-M) (the "Howard Action"), alleging that Plaintiffs Sanford and SWH committed professional malpractice by failing to move for class certification in the DOC action and seeking $25 million in damages (the "Malpractice Claims").

29.     On February 19, 2010, Mr. Sanford and SWH provided notice of the Howard Action to Defendant in compliance with the Policy.

### Defendant's Repeated Acknowledgements Of Coverage

30.     Starting in April 2008, for more than two and a half years, CSIC repeatedly acknowledged that the Policy would provide coverage for the Malpractice Claims.

31.     By letter to Mr. Sanford and SWH dated April 10, 2008, CSIC acknowledged receipt of the Goldberg Letter, stating that it was reviewing the letter in conjunction with the terms, conditions, and exclusions of the Policy and anticipated issuing a position with respect to coverage "in the near future."

32.     By letter dated May 7, 2008, CSIC stated that it "will be treating this matter [the Goldberg Letter] as a notice of circumstances which may give rise to a Claim" and that if any

subsequent Claim arises, CSIC "will treat the Claim as having been made and reported at the time that you gave us Notice of a potential Claim."

33.     After Mr. Sanford and SWH provided notice of the Howard Action to CSIC in February 2010, CSIC responded by letter dated March 23, 2010, in which it acknowledged receipt of the Howard Action complaint, expressly referenced its May 7, 2008 letter and stated that "coverage is available to Sanford Wittels & Heisler LLP for this matter [the Howard Action]." Thereafter, as more fully described below, SWH retained Akin Gump Strauss Hauer & Feld LLP ("Akin Gump") to defend the Howard Action.

34.     By letter to SWH dated May 11, 2010, CSIC reiterated its "right and duty to defend any Claim seeking Damages that are covered by this policy," rejected SWH's counsel of choice for defense of the Malpractice Claims, and informed SWH that it had retained Aaron Handleman from Eccleston and Wolf, P.C. ("Eccleston and Wolf") to defend SWH.

35.     None of the foregoing letters dated April 10, 2008, May 7, 2008, March 23, 2010 or May 11, 2010 (the "ROR Letters") contained a specific request by Defendant for information regarding the Malpractice Claims. Moreover, while the ROR Letters contained general reservations of rights and specific reservations based on certain provisions in the Policy, none of the ROR Letters set forth a specific reservation of rights based on the Warranty Statement or Policy application, grounds upon which CSIC later relied to assert its declination of coverage.

### Defendant's Rejection Of SWH's Counsel Of Choice And Insistence On Retention Of Counsel Selected By CSIC

36.     On or about April 8, 2010, Mr. Sanford and SHW retained Michelle Roberts of Akin Gump to defend them in the Howard Action.

37.     Michelle Roberts is a highly experienced and widely known trial attorney. *Washingtonian Magazine* has ranked Ms. Roberts first on its list of Washington, D.C.'s top 75

7

lawyers, calling her "the finest pure trial lawyer in Washington – magic with juries, loved by judges, feared by opposing counsel." *Legal Times* named Ms. Roberts as one of Washington, D.C.'s 10 Leading Criminal Defense Lawyers. She is also listed in The Best Lawyers in America and Chambers USA: America's Leading Lawyers for Business.

38.     On or about April 8, 2010, SWH provided Akin Gump a $10,000.00 retainer fee.

39.     On May 11, 2010, CSIC wrote to Mr. Sanford and SWH stating that it did not consent to Plaintiffs' retention of Akin Gump and advising that it had retained the law firm of Eccleston and Wolf to defend against the Malpractice Claims in the Howard Action.

40.     Under the terms set forth by CSIC in its May 11, 2010 letter, on or about June 1, 2010, SWH, through Mr. Sanford, advised Michelle Roberts that Plaintiffs would no longer be using her firm to represent them in the Howard Action because CSIC had rejected Plaintiffs Sanford and SWH's choice of counsel.

41.     Plaintiffs have not recouped the $10,000.00 they provided to Ms. Roberts as a retainer.

42.     Pursuant to the terms set forth in CSIC's May 11, 2010 letter, on June 2, 2010, Plaintiffs Sanford and SWH retained the law firm of Eccleston and Wolf to defend the Howard Action.

43.     Because of Defendant's refusal to accept Plaintiffs' counsel of choice, Mr. Sanford and SWH incurred $10,000.00 in fees and have been prevented from securing the defense they believe is necessary to the Malpractice Claims.

## Defendant's Untimely, Wrongful Denial Of Coverage

44.     On November 8, 2010, two and a half years after SWH provided notice of the Goldberg Letter to CSIC and nearly a year after the Howard Action was filed, Wiley Rein LLP,

on behalf of Defendant-Insurer, wrote to Mr. Sanford and SWH advising that "CSIC has tentatively concluded that no coverage is available for the Claim" because they had purportedly failed to comply with conditions precedent to coverage. In that letter (the "Wiley Rein Letter"), Defendant further advised Mr. Sanford and SWH that it "reserv[ed] the right . . . to withdraw from the defense and seek repayment of all amounts paid by CSIC." The principal grounds upon which CSIC based its denial of coverage were: (i) a misquoted version of Section I.A.2(b) of the Policy that is inapplicable; (ii) a "Warranty Statement" provided by SWH in advance of issuance of the Policy; and (iii) the application for the Policy. The November 8, 2010 letter was the first letter in which the Warranty Statement and Policy application were ever mentioned by CSIC and in which Defendant ever gave any indication that it intended to deny coverage.

45.     By November 8, 2010, the law firm of Eccelston and Wolf had already incurred approximately $87,000.00 in legal fees in defending the Howard Action.

46.     Despite the fact that Defendant had notice of a potential claim since April 4, 2008, and notice of the Howard Action since February 19, 2010, Defendant waited over two and half years before notifying Mr. Sanford and SWH of its intent to deny coverage. Indeed, not until there was less than $13,000.00 remaining on Mr. Sanford and SWH's $100,000.00 retention under the Policy did Defendant-Insurer advise them, for the first time, that it was denying coverage for the Malpractice Claims on grounds that were never before stated in CSIC's prior communications with Plaintiffs.

### Defendant's Filing of an Action Against SWH

47.     On December 8, 2010, before providing Mr. Sanford and SWH a reasonable opportunity to respond to the Wiley Rein Letter, CSIC filed a complaint for declaratory

judgment in the United States District Court for the District of Columbia (No. 1:10-cv-02079 [ESH]). That action is currently pending before the Honorable Judge Ellen Segal Huvelle.

## COUNT ONE

### DECLARATORY RELIEF REGARDING COVERAGE

48.  Mr. Sanford and SWH hereby repeat and re-allege each and every allegation set forth in paragraphs 1 through 47, as if fully set forth herein.

49.  All conditions precedent and other requirements for coverage under the Policy have been met, waived or are inapplicable.

50.  Defendant-Insurer has wrongfully refused to provide coverage for the Damages and Claim Expenses associated with the Malpractice Claims.

51.  An actual claim or controversy exists regarding Defendant's contractual obligations to pay Damages and Claim Expenses in connection with the Malpractice Claims.

52.  The issuance of a declaration of rights would resolve this controversy.

53.  Accordingly, the Court should enter a declaratory judgment pursuant to 28 U.S.C. §§ 2201-3303 that Defendant-Insurer is obligated to cover any Damages and Claim Expenses incurred in connection with the Malpractice Claims.

## COUNT TWO

### BREACH OF CONTRACT

54.  Mr. Sanford and SWH hereby repeat and re-allege each and every allegation set forth in paragraphs 1 through 53, as if fully set forth herein.

55.  The Howard Action constitutes a "Claim" within the meaning of the Policy.

56. All conditions precedent and other requirements for coverage under the Policy have been met, waived or are inapplicable.

57. Defendant has breached its obligation to defend Plaintiffs by wrongly refusing to cover and/or reimburse Plaintiffs for Damages and Claim Expenses incurred in connection with the Malpractice Claims.

58. As a result of said breach, Defendant is liable to Plaintiff for damages in excess of $75,000.00, exclusive of interest and costs.

### COUNT THREE

### BAD FAITH

59. Mr. Sanford and SWH hereby repeat and re-allege each and every claim set forth in paragraphs 1 through 58, as if fully set forth herein.

60. For two and a half years, Defendant gave no indication that it intended to deny coverage. Defendant gave every indication that it would defend the Malpractice Claims.

61. After the Howard Action was filed, in written correspondence, Defendant acknowledged coverage, rejected Mr. Sanford and SWH's chosen counsel and insisted on its own choice of counsel to defend SWH, threatening to withhold coverage if Mr. Sanford and SWH did not accept Defendant's choice of counsel. Defendant caused SWH to incur legal fees for services provided by CSIC's chosen counsel, virtually exhausting the entire $100,000.00 retention under the Policy. At the same time, compelled by Defendant to terminate SWH's engagement of counsel of their choice, Mr. Sanford and SWH incurred additional legal fees in the amount of $10,000.00.

62.     By indicating that it would extend coverage to Mr. Sanford and SWH for the Malpractice Claims and then denying coverage two and a half years after receiving notice of the Malpractice Claims and nearly a year after receiving notice of the Howard Action, Defendants breached their duty of good faith to Plaintiffs, causing Mr. Sanford and SWH to suffer significant damage.

**WHEREFORE**, Plaintiffs Sanford and SWH request a judgment against Defendant as follows:

1.     On their **First Cause of Action**, a Declaration that:

   a.     Defendant is obligated to cover any Damages and Claims Expenses incurred to date in connection with the Malpractice Claims above the retention set forth in the Policy;

   b.     Defendant is obligated to cover any Damages and Claims Expenses incurred going forward in connection with the Malpractice Claims above the retention set forth in the Policy;

   c.     Defendant is obligated to pay Plaintiffs Sanford and SWH's costs and pre- and post-judgment interest associated with bringing this case;

2.     On Their **Second Cause of Action**, judgment in an amount in excess of the jurisdictional basis of $75,000, together with attorneys' fees and costs, and pre- and post-judgment interest, along with any other relief the Court deems proper; and

3.     On Their **Third Cause of Action**, judgment in an amount in excess of the jurisdictional basis of $75,000, together with any consequential damages,

12

attorneys' fees and costs, and pre-and post-judgment interest; along with any other relief the Court deems proper.

### <u>JURY TRIAL DEMANDED</u>

A jury trial is demanded on all counts.

Dated: February 4, 2011
      New York, New York
                           BY:

Barry R. Ostrager, Bar No.  BO5379
(bostrager@stblaw.com)
Elisa Alcabes, Bar No. EA5493
(ealcabes@stblaw.com)
**SIMPSON THACHER & BARTLETT, LLP**
425 Lexington Avenue
New York, New York 10017
(Tel) 212-455-2000
(Fax) 212-455-2502

13

# EXHIBIT 1

01/11/2008 03:38 PM

☐ Capitol Indemnity Corporation          Policy Number: 0303-7637
☒ Capitol Specialty Insurance Corporation
☐ Platte River Insurance Company

## LAWYERS PROFESSIONAL LIABILITY
## INSURANCE POLICY
## DECLARATIONS

THIS IS A CLAIMS MADE POLICY WHICH APPLIES ONLY TO CLAIMS FIRST MADE AND REPORTED DURING THE POLICY PERIOD OR ANY EXTENDED REPORTING PERIOD. THE PAYMENT OF CLAIMS EXPENSES REDUCES AND MAY EXHAUST THE LIMIT OF LIABILITY. PLEASE READ AND REVIEW THE POLICY CAREFULLY.

**Item 1.   Name and Mailing Address of Named Insured:**
Sanford Wittels & Heisler, LLP
950 Third Avenue, 10th Floor
New York, NY 10022

**Item 2.   Policy Period:**

| | |
|---|---|
| Inception Date: | December 10, 2007 |
| Expiration Date: | December 10, 2008 |

At 12:01AM Standard Time at the Mailing Address shown above

**Item 3.   Limit of Liability (inclusive of Claims Expenses):**

$ 7,000,000  maximum limit of liability per CLAIM

$ 7,000,000  maximum aggregate limit of liability for all CLAIMS

**Item 4.   Retentions:**

$ 100,000  each and every CLAIM

**Item 5.   Notices required to be given to the Insurer must be addressed to:**

Darwin Professional Underwriters, Inc.
9 Farm Springs Road
Farmington, CT 06032

THE INSURER(S) NAMED HEREIN IS (ARE) NOT LICENSED BY THE STATE OF NEW YORK, NOT SUBJECT TO ITS SUPERVISION, AND IN THE EVENT OF THE INSOLVENCY OF THE INSURER(S), NOT PROTECTED BY THE NEW YORK STATE SECURITY FUNDS. THE POLICY MAY NOT BE SUBJECT TO ALL OF THE REGULATIONS OF THE INSURANCE DEPARTMENT PERTAINING TO POLICY FORMS.

E4005 (2/2007)



This is to certify that Excess Line Association of New York received and reviewed the          01/14/2008
attached insurance document in accordance with Article 21 of the New York State
Insurance Law

THE INSURER(S) NAMED HEREIN IS (ARE) NOT LICENSED BY THE STATE OF NEW YORK,
NOT SUBJECT TO ITS SUPERVISION, AND IN THE EVENT OF THE INSOLVENCY OF
THE INSURER(S), NOT PROTECTED BY THE NEW YORK STATE SECURITY FUNDS.
THE POLICY MAY NOT BE SUBJECT TO ALL OF THE REGULATIONS OF THE INSURANCE
DEPARTMENT PERTAINING TO POLICY FORMS.

_eLANY_
EXCESS LINE ASSOCIATION
OF NEW YORK

☐ **Capitol Indemnity Corporation**
☒ **Capitol Specialty Insurance Corporation**
☐ **Platte River Insurance Company**

Policy Number: 0303-7637

# LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY DECLARATIONS

**THIS IS A CLAIMS MADE POLICY WHICH APPLIES ONLY TO CLAIMS FIRST MADE AND REPORTED DURING THE POLICY PERIOD OR ANY EXTENDED REPORTING PERIOD. THE PAYMENT OF CLAIMS EXPENSES REDUCES AND MAY EXHAUST THE LIMIT OF LIABILITY. PLEASE READ AND REVIEW THE POLICY CAREFULLY.**

**Item 1.  Name and Mailing Address of Named Insured:**
Sanford Wittels & Heisler, LLP
950 Third Avenue, 10th Floor
New York, NY 10022

**Item 2.  Policy Period:**

Inception Date:        December 10, 2007
Expiration Date:      December 10, 2008

**At 12:01AM Standard Time at the Mailing Address shown above**

**Item 3.  Limit of Liability (inclusive of Claims Expenses):**

$ 7,000,000  maximum limit of liability per **CLAIM**

$ 7,000,000  maximum aggregate limit of liability for all **CLAIMS**

**Item 4.  Retentions:**

$ 100,000  each and every **CLAIM**

**Item 5.  Notices required to be given to the Insurer must be addressed to:**

Darwin Professional Underwriters, Inc.
9 Farm Springs Road
Farmington, CT 06032

**THE INSURER(S) NAMED HEREIN IS (ARE) NOT LICENSED BY THE STATE OF NEW YORK, NOT SUBJECT TO ITS SUPERVISION, AND IN THE EVENT OF THE INSOLVENCY OF THE INSURER(S), NOT PROTECTED BY THE NEW YORK STATE SECURITY FUNDS. THE POLICY MAY NOT BE SUBJECT TO ALL OF THE REGULATIONS OF THE INSURANCE DEPARTMENT PERTAINING TO POLICY FORMS.**

E4005 (2/2007)

**Item 6.  Premium:**

Total Policy Premium        $ 92,195

**Item 7.  Extended Reporting Periods:**

(a)    Cancellation or refusal to renew Extended Reporting Period under Section IV.A.:

12 Months, Additional Premium: 150% of Annual Premium;

(b)    Non-Practicing Extended Reporting Period under Section IV.B:

36 Months, Additional Premium: $27,219; only available if conditions specified in IV.B. are met.

**Item 8.  Endorsements Attached at Issuance:**
1.  s1006 (4/2005) - Service of Suit
2.  v1038 (11/2003) - Limit Coverage for Prior Acts
3.  v1676 (1/2006) - Accept Competitor's Application

THESE DECLARATIONS, THE POLICY FORM, ANY ENDORSEMENTS AND THE APPLICATION CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE INSURER AND THE INSURED RELATING TO THIS INSURANCE.

**In Witness Whereof, the Insurer has caused this Policy to be executed by its authorized officers.**

E4005 (2/2007)

## ENDORSEMENT NO. 1

### SERVICE OF SUIT

This Endorsement, effective at 12:01AM on December 10, 2007, forms part of

Policy No.      0303-7637
Issued to       Sanford, Wittels & Heisler, LLP
Issued by       Capitol Specialty Insurance Corporation

Pursuant to any statute of any state, territory or district of the United States which makes provision therefore, the Company hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the Statute, or his successors in office, as our true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured(s) or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the below named as the person whom the said officer is authorized to mail process or a true copy thereof.

It is further agreed that service of process in such suit may be made upon Stephen J. Sills, Vice President of the Company, or his nominee, at 9 Farm Springs Road, Farmington, CT 06032 and that in any suit instituted against any one of them upon this policy, the Company will abide by the final decision of such Court or any Appellate Court in the event of an appeal.

NOTHING HEREIN SHALL VARY, ALTER, WAIVE, OR EXTEND ANY OF THE TERMS, PROVISIONS, REPRESENTATIONS, CONDITIONS OR AGREEMENTS OF THE POLICY OTHER THAN AS STATED ABOVE.

_____

Authorized Representative

## ENDORSEMENT NO. 2

### LIMIT COVERAGE FOR PRIOR ACTS

This Endorsement, effective at 12:01AM on December 10, 2007, forms part of

Policy No.    0303-7637
Issued to     Sanford, Wittels & Heisler, LLP
Issued by     Capitol Specialty Insurance Corporation

In consideration of the premium charged it is hereby agreed that INSURING AGREEMENT, Section I (A) (2), is deleted in its entirety and replaced with the following provision:

2. on or after December 10, 2004, provided that all of the following three conditions are met:

   a)    the **Insured** did not notify any prior insurer of such act or omission or **Related Act or Omission**; and

   b)    prior to the inception date of the first policy issued by the **Company** if continuously renewed, no **Insured** had any basis (1) to believe that any **Insured** had breached a professional duty; or (2) to foresee that any such act or omission or **Related Act or Omission** might reasonably be expected to be the basis of a **Claim** against any Insured; and

   c)    there is no policy that provides insurance to the **Insured** for such liability or **Claim**.


All other terms, conditions and limitations of this Policy shall remain unchanged.


_(signature)_

_____

Authorized Representative

### ENDORSEMENT NO. 3

### ACCEPT COMPETITOR'S APPLICATION

This Endorsement, effective at 12:01AM on December 10, 2007, forms part of

Policy No.      0303-7637
Issued to        Sanford, Wittels & Heisler, LLP
Issued by       Capitol Specialty Insurance Corporation

In consideration of the premium charged, it is hereby agreed that:

It is understood and agreed that the application for Lawyer's Professional Liability Insurance submitted to Lloyd's,  and dated November 1, 2007, byJeremy Heisler, the **Named Insured,** shall be treated as if it were submitted directly  to Darwin Professional Underwriters, Inc. ("Darwin") and the Underwriter/Insurer identified in the Declarations, and Darwin and the Underwriter/Insurer identified in the Declarations shall succeed to the rights and interests of the insurer named in that application.

Such application will be treated as the **Application** for this Policy, and shall be on file and deemed to be attached to and form a part of the Policy, as if physically attached thereto.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

v1676 (1/2006)

# *Lawyers Professional Liability Insurance Policy*

**I.   INSURING AGREEMENT**
    A.   COVERAGE
    B.   DEFENSE AND INVESTIGATION
    C.   CONSENT TO SETTLE

**II.   LIMIT OF LIABILITY AND RETENTION**
    A.   LIMIT OF LIABILITY
    B.   RETENTION
    C.   RELATED ACTS
    D.   MULTIPLE POLICIES

**III.   EXCLUSIONS**

**IV.   EXTENDED REPORTING PERIOD OPTIONS**
    A.   EXTENDED REPORTING PERIOD
    B.   NONPRACTICING EXTENDED REPORTING PERIOD
    C.   DEATH OR DISABILITY OF AN INSURED EXTENDED REPORTING PERIOD
    D.   ALL REPORTING PERIOD OPTIONS

**V.   CONDITIONS**
    A.   POLICY TERRITORY
    B.   NOTICE TO THE COMPANY
    C.   ASSISTANCE AND COOPERATION OF THE INSURED
    D.   PROTECTION FOR THE INNOCENT INSUREDS
    E.   SUBROGATION
    F.   CANCELLATION
    G.   CHANGE IN RISK
    H.   OTHER INSURANCE
    I.   ASSIGNMENT
    J.   ACTION AGAINST THE COMPANY
    K.   APPLICATION
    L.   ENTIRE AGREEMENT
    M.   WAIVER
    N.   DEFINED TERMS

**VI.   DEFINITIONS**

# *Lawyers Professional Liability Insurance Policy*

**THIS IS A CLAIMS MADE AND REPORTED POLICY WHICH APPLIES TO CLAIMS FIRST MADE AND REPORTED TO THE COMPANY DURING THE POLICY PERIOD OR ANY EXTENDED REPORTING PERIOD. THE PAYMENT OF CLAIMS EXPENSES REDUCES AND MAY EXHAUST THE LIMIT OF LIABILITY. PLEASE READ THE POLICY CAREFULLY.**

I.   **INSURING AGREEMENT**

A.   **COVERAGE**

The **Company** will pay on behalf of an **Insured**, subject to the limit of liability, all amounts in excess of the retention shown in the Declarations that an **Insured** becomes legally obligated to pay as **Damages** and **Claim Expenses** because of a **Claim** that is made and reported to the **Company** during the **Policy Period** or any extended reporting period. It is a condition precedent to coverage under this policy that the act or omission occurred:

1.  during the **Policy Period**; or

2.  prior to the **Policy Period**, provided that all of the following three conditions are met:

    a)  the **Insured** did not notify any prior insurer of such act or omission or **Related Act or Omission**; and

    b)  prior to the inception date of the first policy issued by the **Company** if continuously renewed, no **Insured** had any basis (1) to believe that any **Insured** had breached a professional duty; or (2) to foresee that any such act or omission or **Related Act or Omission** might reasonably be expected to be the basis of a **Claim** against any **Insured**; and

    c)  there is no policy that provides insurance to the **Insured** for such liability or **Claim**.

B.   **DEFENSE AND INVESTIGATION**

The **Company** shall have the right and duty to defend any **Claim** seeking **Damages** that are covered by this policy made against an **Insured** even if any of the allegations of the **Claim** are groundless, false or fraudulent. The **Company** shall have the right to select defense counsel for the investigation, defense or settlement of the **Claim** and the **Company** shall pay all reasonable **Claim Expenses** arising from the **Claim**.

The **Company** shall have the right to conduct such investigation or negotiation of any **Claim** as it deems expedient. The **Company** shall not be obligated to pay any **Damages** or **Claim Expenses**, or to defend or continue to defend any **Claim** after the **Company's** limit of liability has been exhausted by payment, or by deposit in a court having jurisdiction of sums reflecting the remaining applicable limit of liability of the policy.

C.   **CONSENT TO SETTLE**

The **Company** shall not settle any **Claim** without the consent of the **Insured,** which consent shall not be unreasonably withheld. If, however, the **Insured** refuses to consent to any settlement recommended by the **Company** and acceptable to the claimant, then the **Company's** liability for **Damages** and **Claim Expenses** relating to that **Claim** shall not exceed the amount for which the **Claim** could have been settled plus all **Claim Expenses** incurred up to the time the **Company** made its recommendation.

If the **Insured** refuses to settle, once the total **Claim Expenses** equal the amount for which the **Claim** could have been settled plus all **Claim Expenses** incurred up to the time the **Company** made its recommendation, the **Company** shall have the right to withdraw from the further investigation and defense thereof by tendering control of such investigation or defense to the **Insured** and the **Insured**

agrees, as a condition of the issuance of this policy, to accept such tender and proceed solely at its own cost and expense.  If the **Named Insured** has not paid premiums or retentions which are due, the **Company** has the right, but not the obligation, to settle any **Claim** without the consent of the **Insured**.

## II.   LIMIT OF LIABILITY AND RETENTION

Regardless of the number of **Insureds**, number of **Claims** or number of claimants who make a **Claim** against the **Insureds**, the **Company's** liability is limited as follows:

### A.   LIMIT OF LIABILITY

The limit of liability specified in Item 3 of the Declarations hereof as the annual aggregate shall be the maximum aggregate liability for all **Damages** and **Claim Expenses** from all **Claims** to which this Policy applies.  **Claim Expenses** are part of and not in addition to the limit of liability.

The **Company** shall not be obligated to pay any **Damages** or **Claim Expenses** or to defend or continue to defend any **Claim** after the Limit of Liability has been exhausted.  In such case, the **Company** shall have the right to withdraw from the further investigation or defense of any pending **Claim** by tendering control of such investigation or defense to the **Named Insured** and the **Named Insured** agrees, as a condition to the issuance of this policy, to accept such tender and proceed solely at its own cost and expense.

### B.   RETENTION

The retention amount stated in Item 4 of the Declarations shall apply to all **Damages** and **Claim Expenses** and shall apply to each and every **Claim**.  The **Company** shall only be liable to pay, subject to the limit of liability provisions stated in this section for **Damages** and **Claim Expenses** in excess of such retention and such retention shall not be insured under this Policy.  The **Named Insured** shall pay the retention no later than 15 days after demand by the **Company**.

### C.   RELATED ACTS

**Claims** based upon or arising out of the same act or omission or **Related Act or Omission** shall be considered a single **Claim** and shall be considered first made at the time the earliest **Claim** arising out of such a **Related Act or Omission** was first made.  All **Damages** and **Claims Expenses** from such **Claims** shall be subject to one limit of liability.

### D.   MULTIPLE POLICIES

If this policy and any other policy issued by **Company** including any extended reporting period coverage afforded by such policy or policies, provides coverage for the same **Claim** against the **Insured**, the maximum limit of liability under all the policies shall not exceed the highest remaining each **Claim** limit of liability under any one policy.

## III.   EXCLUSIONS

This policy shall not apply to any **Claim** based upon or arising out of, in whole or in part;

A.   any intentional, criminal, fraudulent, malicious or dishonest act or omission by or at the direction of an **Insured**; except that this exclusion shall not apply unless there is a finding in any proceeding or an admission of such conduct;

B.   any act whatsoever of an **Insured** in connection with a trust or estate when an **Insured** is a beneficiary or distributee of the trust or estate;

C.   any act or omission by any **Insured** in an action brought by or on behalf of any other **Insured**;

D.   the **Insured's** capacity or status as:

1.   an officer, director, partner, trustee, shareholder, manager or employee of a business enterprise, charitable organization or pension, welfare, profit sharing, mutual or investment fund or trust.

2.   a public official, or an employee of a governmental body, subdivision, or agency unless the **Insured** is privately retained solely to render **Legal Services** to the governmental body, subdivision or agency and the remuneration for the **Legal Services** is paid directly or indirectly to the **Named Insured**.

E.   the alleged acts or omissions by an **Insured**, with or without compensation, for any business enterprise whether for profit or not-for-profit in which any **Insured** has a **Material Interest**;

F.   the alleged rendering of investment advice, including advice given by any **Insured** to make any investment or to refrain from doing so.

G.   any alleged violations by an Insured of the Employment Retirement Income Security Act of 1974, its amendments, or any regulation or orders promulgated pursuant thereto, or of any similar provisions of federal, state or local law or regulation;

H.   any liability assumed by an **Insured** under any oral or written contract or agreement, unless such liability would have attached to the **Insured** by law in the absence of such contract or agreement;

I.   the notarized certification or acknowledgement of signature without the physical appearance before such notary public of the person who is or claims to be the person signing said instrument;

J.   any actual or alleged discrimination of any kind by any **Insured**;

K.   any injury or damage which would not have occurred in whole or in part but for the actual or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** at any time;

L.   any request, demand or order that any **Insured** or others test for monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Pollutants**, or a **Claim** brought by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **Pollutants**.

## IV.   EXTENDED REPORTING PERIOD OPTIONS

### A.   EXTENDED REPORTING PERIOD

In the event of cancellation or refusal to renew this policy by the **Company**, the **Named Insured** has the right upon notification to the **Company** of its intent to purchase an extended reporting period endorsement, and payment to the **Company** of an additional premium as set forth in Item 7 of the Declarations within thirty (30) days of the cancellation or non-renewal, to extend the period for reporting **Claims** first made against an **Insured** after the termination of the **Policy Period** for any actual or alleged act or omission occurring prior to the termination of the **Policy Period** and otherwise covered by this policy.  For purposes of determining the availability of an extended reporting period endorsement, any change in the premium terms or terms on renewal shall not constitute a refusal to renew.

### B.   NON-PRACTICING EXTENDED REPORTING PERIOD

If an **Insured**, as defined in Part IV – Definitions, Section G – **Insured**, Subsection 2. ceases the private practice of law during the **Policy Period**, and such **Insured** has been continuously insured by the **Company** for at least three (3) consecutive years, then such **Insured** has the right, upon notification to the **Company**, to select a non-practicing extended reporting period endorsement to extend the period for reporting **Claims** first made against an **Insured** after the termination of the **Policy**

**Period** for any actual or alleged act or omission occurring prior to the termination of the **Policy Period** and otherwise covered by this policy.

The **Insured** may select either of the following extended reporting period options:

1. a one-year non-practicing extended reporting period for no additional premium; or

2. a three-year non-practicing extended reporting period by payment to the **Company** of the additional premium as set forth in Item 7 of the Declarations within thirty (30) days of such retirement or the ceasing of the private practice of law,

C.   **DEATH OR DISABILITY OF AN INSURED EXTENDED REPORTING PERIOD**

If an **Insured**, as defined in Part VI – Definitions, Section G – **Insured**, Subsection 2. dies during the **Policy Period**, such **Insured** shall be provided with a death extended reporting period endorsement commencing after the termination of the **Policy Period** at no additional premium until the executor or administrator of the estate is discharged, provided always that the death did not result from an intentionally self-inflicted injury, suicide or alcohol or drug abuse, and provided always that written notification and written proof of death of the **Insured** is provided within sixty (60) days of the date of death or prior to the end of the **Policy Period**, whichever is earlier.

If an **Insured** becomes **Totally and Permanently Disabled** during the **Policy Period**, such **Insured** shall be provided with a disability extended reporting period endorsement commencing after the termination of the **Policy Period** at no additional premium until the **Insured** is no longer **Totally and Permanently Disabled**. A condition to the extended reporting period for total and permanent disability shall be that the **Insured** has had continuous coverage with the **Company** for at least three (3) consecutive prior full years, the **Insured** or his legal guardian provides written notice of the disability to the **Company** within sixty (60) days or prior to the termination of the **Policy Period**, whichever is earlier, and the **Insured** or the **Insured's** legal guardian provides a physician's written certification of the disability, including the date it began.

D.   **ALL REPORTING PERIOD OPTIONS**

1. The right to any of the extended reporting period endorsement options is not available to any **Insured** where cancellation or nonrenewal by the **Company** is due to nonpayment of premium, retention or other money due to the **Company** or if the **Insured** has had his or her license to practice law suspended or revoked.

2. The limit of liability available for any extended reporting period option is part of, and not in addition to, the limit of liability shown in Item 3 of the Declarations of the policy. The retention as shown on the Declarations will apply separately to each and every **Claim** brought under any extended reporting period option. The retention will be waived in the event of the death of the **Insured** or in the event the **Insured** becomes **Totally and Permanently Disabled**.

3. None of the extended reporting period options are cancelable or renewable. The additional premium for the extended reporting period endorsement is fully earned at the inception of the extended reporting period.

V.    **CONDITIONS**

A.    **POLICY TERRITORY**

This insurance is provided worldwide.

B.    **NOTICE TO THE COMPANY**

1.    Notice to the **Company** shall be made at such location as is indicated in Item 5 of the Declarations.

2.    **NOTICE** OF AN ACTUAL **CLAIM**

The **Insured**, as a condition precedent to this policy, shall immediately provide **Notice** to the **Company** of any **Claim** made against an **Insured**.  In the event suit is brought against the **Insured**, the **Insured** shall immediately forward to the **Company** every demand, notice, summons or other process received directly or by an **Insured's** representative.

3.    **NOTICE** OF A POTENTIAL **CLAIM**

If during the **Policy Period** any **Insured** becomes aware of any act or omission or circumstance that may reasonably be expected to be the basis of a **Claim** against an **Insured**, the **Insured** shall as a condition precedent to this policy immediately give **Notice** to the **Company** of such act or omission or circumstance, and the reasons for anticipating a **Claim**.  Any such **Claim** that is subsequently made against the **Insured** and promptly reported to the **Company** shall be deemed to have been made and reported at the time such **Notice** was given.

4.    **FRAUDULENT CLAIM**

If any **Insured** shall commit fraud in proffering any **Claim** with regard to amount or otherwise, this policy shall become void *ab initio* as to such **Insured**.

C.    **ASSISTANCE AND COOPERATION OF THE INSURED**

All **Insureds** shall cooperate with the **Company**, including providing all information requested by the **Company** regarding any **Claim**, and cooperating fully with the **Company** in the defense, investigation and settlement of any **Claim**.  Upon the **Company's** request, all **Insureds** shall submit to examination by a representative of the **Company**, under oath if required.  In addition, upon the **Company's** request, all **Insureds** shall attend hearings, depositions and trials, and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses, and in the conduct of suits, all without charge to the **Company**.

The **Insured** shall follow the **Company's** direction regarding whether to accept or reject a demand for arbitration of any **Claim** and shall not voluntarily agree to arbitrate a **Claim** without the **Company's** written consent.  No **Insured** shall, except  at the **Insured's** own cost, make any payment, make any admission, admit liability, waive any rights, settle any **Claim**, assume any obligation or incur any expense without the prior written consent of the **Company.**

D.    **PROTECTION FOR THE INNOCENT INSUREDS**

Whenever coverage under this policy would be excluded, suspended or lost because of Section III – Exclusions, subsection A, the **Company** agrees that such insurance as would otherwise be afforded under this policy shall be applicable with respect to any **Insured** who did not acquiesce in or remain passive after having knowledge of such conduct.

E.   **SUBROGATION**

The **Company** shall be subrogated to all **Insureds'** rights of recovery against any person or organization. All **Insureds** shall assist the **Company** in effecting any rights of indemnity, contribution and apportionment available to any **Insured**, including the execution of such documents as are necessary to enable the **Company** to pursue claims in the **Insureds'** names and shall provide all other assistance and cooperation which the **Company** may reasonably require. All **Insureds** shall cooperate with the **Company** and do nothing to jeopardize, prejudice or terminate in any way such rights.

The **Company** shall not exercise any such rights against any **Insured** except as provided herein. Notwithstanding the foregoing, however, the **Company** reserves the right to exercise any rights of subrogation against any **Insured** with respect to any **Claim** brought about or contributed to by the intentional, criminal, fraudulent, malicious or dishonest act or omission of such **Insured**.

F.   **CANCELLATION**

This policy may be canceled by the **Named Insured** by mailing advance written notice to the **Company** stating when such cancellation shall take effect.  If canceled by the **Named Insured**, the **Company** shall retain the greater of:

1.  The premium shown in Item 6 of the Declarations minus 90% of the pro rata unearned premium; or,

2.  25% of the premium shown in Item 6 of the Declarations.

This policy may be canceled by the **Company** by written notice mailed to the **Named Insured** at the address shown in Item 1 of the Declarations.  The notice will state the reason for and the effective date of the cancellation.

If the policy is canceled by the **Company**, the **Company** shall retain the pro rata earned premium. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter.  Failure to pay any premium adjustment at, on, or around the time of the effective date of cancellation shall not alter the effectiveness of cancellation.

This policy shall terminate upon expiration of the **Policy Period** shown in Item 2 of the Declarations or upon any earlier cancellation.

G.   **CHANGE IN RISK**

1.   If, during the Policy Period, any of the following events occur:

    a.   the merger into or acquisition of the **Named Insured** by another entity such that the **Named Insured** is not the surviving entity, or the acquisition of substantially all of the assets of the **Named Insured**;

    b.   the dissolution of, or appointment of a receiver, conservator, trustee, liquidator or rehabilitator or similar official for the **Named Insured**;

    the **Named Insured** shall report the event to the **Company** as soon as practicable.  Coverage will continue with respect to **Claims** for acts or omissions committed before such event, but coverage will cease with respect to **Claims** for acts or omissions committed on or after such event.  After any such event, the policy may not be canceled, and the entire premium for the policy will be deemed fully earned.

2.   If, during the Policy Period, the number of lawyers or professional corporations performing **Legal Services** on behalf of the **Named Insured** increases by more than 30%, the **Named Insured** shall immediately notify the **Company**.  The **Company** shall have the right to modify the terms and conditions of the policy, including premium, as it determines in its sole discretion is appropriate.

H.   **OTHER INSURANCE**

Subject to I – Insuring Agreement, A – Coverage and II – Limit of Liability and Retention, A – Limit of Liability, this insurance will apply only as excess insurance over any other valid insurance.  This policy is written as specific excess of coverage available under any extended reporting period.

I.   **ASSIGNMENT**

Neither this policy nor any **Insured's** interest under this policy may be assigned.

J.   **ACTION AGAINST THE COMPANY**

No action shall lie against the **Company** unless, as a condition precedent thereto, all **Insureds** have fully complied with all the terms of this policy and not until the amount of all **Insured's** obligations to pay have been fully and finally determined either by judgment against all **Insureds** after actual trial or by written agreement of the **Named Insured**, the claimant and the **Company**.

Nothing contained in this policy shall give any person or organization any right to join the **Company** as a defendant in the action against any **Insured**.

K.   **APPLICATION**

By acceptance of this policy, all **Insureds** reaffirm as of the effective date of this policy that:

1.   the statements in the **Application** are true and accurate and are specifically incorporated herein, and are all **Insureds'** agreements, personal representations and warranties; and

2.   all such communicated information shall be deemed material to the **Company's** issuance of this policy; and

3.   this policy is issued in reliance upon the truth and accuracy of such representations; and

4.   this policy embodies all agreements existing between the **Insureds** and the **Company**, or any of its agents, relating to this insurance; and

5.   if any representation is false or misleading, this policy shall be void *ab initio*.

L.   **ENTIRE AGREEMENT**

No change or modification of this policy shall be effective except when made by a written endorsement to this policy signed by an authorized representative of the **Company**.  No representations by any person shall have any force or effect except as included in such endorsement.

M.   **WAIVER**

The **Company's** failure to insist on strict compliance with any terms, provisions or conditions to coverage of this policy or the failure to exercise any right or privilege shall not operate or be construed as a waiver thereof or of any subsequent breach thereof or a waiver of any other terms, provisions, conditions, privileges or rights.

N.   **DEFINED TERMS**

Terms used in the policy in bold faced type are defined herein.

VI.   **DEFINITIONS**

A.   **APPLICATION** means the application submitted to the **Company** or any of its agents for this Policy, all prior applications submitted to the **Company** or any of its agents for any prior policies issued by the company to the **Named Insured** and any and all materials and information submitted to or obtained by the **Company** in connection with such applications, including all statements made by the Insured or their agents or brokers, all of which are deemed to be on file with the **Company** and are deemed to be attached to, and form part of this Policy, as if physically attached.

B.   **CLAIM** means:

1.   a demand for money or **Legal Services** arising out of any actual or alleged acts, errors or omissions in connection with the performance of, or actual or alleged failure to perform, **Legal Services**;

2.   a demand for money in connection with **Personal Injury**;

3.   a request to toll or waive a statue of limitations in connection with (1) or (2) above.

C.   **CLAIM EXPENSES** means:

1.   reasonable fees, costs and expenses charged by attorneys retained or approved by the **Company** for a **Claim** brought against an **Insured**;

2.   reasonable and necessary fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a **Claim** including, but not limited to, premiums for any appeal bond, attachment bond or similar bond but without any obligation of the **Company** to apply for or furnish such bond.

**Claim Expenses** shall not include:

1.   salaries, loss of earnings, reimbursement for the **Insured's** time or attendance required in any investigation, defense or appearance;

2.   other remuneration by or to any **Insured**.

The limit of liability shall first be applied to **Claim Expenses** with the remainder, if any, being the amount available to pay as **Damages**. The determination by the **Company** as to the reasonableness of **Claim Expenses** shall be conclusive on all **Insureds**.

D.   **COMPANY** means the Insurance company shown in the Declarations.

E.   **DAMAGES** means the monetary portion of any judgment, award or settlement, provided such settlement is negotiated with the assistance and approval of the **Company**. **Damages** do not include:

1.   compensation for bodily injury to, sickness, disease, death of any person, emotional distress or other emotional judgments or awards;

2.   compensation for injury to or destruction of tangible property or loss of use or value thereof;

3.   personal profit or advantage to which the **Insured** was not legally entitled;

4.   criminal or civil fines, taxes, penalties (statutory or otherwise), fees or sanctions;

5.   punitive, exemplary or multiple damages;

6.   matters deemed uninsurable by law;

7.  legal fees, costs and expenses paid to or incurred or charged by the **Insured**, no matter whether claimed as restitution of specific funds, forfeiture, financial loss, setoff or otherwise, and injuries that are a consequence of any of the foregoing; or

8.  any form of equitable or non-monetary relief.

F.  **IMMEDIATE FAMILY** means:

1.  the **Insured**;

2.  the **Insured's** spouse;

3.  the **Insured's** parent(s), adoptive parent(s), or step-parent(s);

4.  the **Insured's** sibling(s) or step-sibling(s);

5.  the **Insured's** child(ren), adoptive child(ren), or step-child(ren).

G.  **INSURED** means:

1.  **Named Insured;**

2.  any lawyer or professional corporation listed in the application on the day the **Policy Period** incepts until such time as the lawyer or professional corporation ceases to be a member of the **Named Insured** subject to section 4 below, but only in rendering or failing to render **Legal Services** on behalf of the **Named Insured**;

3.  any lawyer or professional corporation who becomes a partner, officer, director, stockholder or shareholder or employee of the **Named Insured** during the **Policy Period** until such time as the lawyer or professional corporation ceases to be a member of the **Named Insured** subject to section 4 below, but only in rendering or failing to render **Legal Services** on behalf of the **Named Insured**;

4.  any lawyer or professional corporation who is a former partner, officer, director, stockholder or shareholder or employee of the **Named Insured** or **Predecessor Firm** but only in rendering or failing to render **Legal Services** on behalf of the **Named Insured** or **Predecessor Firm**;

5.  any person or entity who is designated by the **Named Insured** as counsel or of counsel in the application, but only in rendering or failing to render **Legal Services** on behalf of the **Named Insured**;

6.  any other person who is employed or retained by the **Named Insured** as a legal secretary, paralegal, contract attorney or other legal office staff member, but only in rendering or failing to render **Legal Services** on behalf of the **Named Insured** and also only within the scope of such employment or retention agreement; and,

7.  the estate, heirs, executors, administrators, assigns and legal representatives of any **Insured** in the event of such **Insured's** death, incapacity, insolvency or bankruptcy, but only to the extent that such **Insured** would otherwise be provided coverage under this policy.

H.  **LEGAL SERVICES** means those services performed on behalf of the **Named Insured** for others by an **Insured** as a licensed lawyer in good standing, arbitrator, mediator, title agent, notary public, administrator, conservator, receiver, executor, guardian, trustee or in any other fiduciary capacity but only where the act or omission was in the rendering of services ordinarily performed as a lawyer. **Legal Services** do not include services rendered as a real estate agent or broker or as an insurance agent or broker.

I.  **MATERIAL INTEREST** means the right of an **Insured** or a member of an **Insured's Immediate Family** directly or indirectly to:

    1.  own 10% or more of an interest in an entity; or

    2.  vote 10% or more of the issued and outstanding voting stock in an incorporated entity; or

    3.  elect 10% or more of the directors of an incorporated entity; or

    4.  receive 10% or more of the profits of an unincorporated entity; or

    5.  act as general partner of a limited partnership, managing general partner of a general partnership, or comparable positions in any other business enterprise.

J.  **NAMED INSURED** means the entity named in Item 1 of the Declarations.

K.  **NOTICE** means the **Insured's** providing the following information to the **Company**, either in writing or as otherwise authorized by the **Company**:

    1.  the description of the alleged act or omission or circumstance and date it occurred; and

    2.  the identities of the claimants or potential claimants; and

    3.  the identities of the alleged or potentially responsible **Insured(s),** and

    4.  the alleged consequences or **Damages** which could result; and

    5.  the date and description of how the **Insured(s)** first became aware of the act or omission or circumstance.

L.  **PERSONAL INJURY** means an allegation of libel, slander, violation of a right of privacy, false arrest, detention, imprisonment, wrongful entry, eviction, malicious prosecution or abuse of process arising from the rendering of **Legal Services**, unless deemed uninsurable under the law pursuant to which this policy shall be construed.

M.  **POLICY PERIOD** means the period of time between the Inception Date to the Expiration Date as shown in Item 2 of the Declaration, or from the Inception Date to any earlier cancellation or termination date.

N.  **POLLUTANT** means any:

    1.  smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials (including materials which are intended to be or have been recycled, reconditioned or reclaimed) or other irritants or contaminants; and

    2.  mold, mildew, spores, mycotoxins, fungi, organic pathogens or other micro organisms of any type, nature or description whatsoever.

O.  **PREDECESSOR FIRM** means any entity engaged in **Legal Services** to whose financial assets and liabilities the **Named Insured** is the majority successor in interest.

P.  **RELATED ACT OR OMISSION** means all acts or omissions based on, arising out of, directly or indirectly resulting from, or in any way involving the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events.

Q.  **TOTALLY OR PERMANENTLY DISABLED** means the **Insured** is wholly prevented from rendering **Legal Services**, provided that the disability has continued for at least six (6) months, is reasonably

expected to be continuous and permanent and the disability did not result from intentionally self-inflicted injury, attempted suicide, alcohol or drug abuse.

In Witness Whereof, the **Company** has caused this policy to be executed by its authorized officers, but this policy will not be valid unless countersigned on the Declarations page by a duly authorized representative of the **Company**.